IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

KIMAIA HAYWOOD                                                           PLAINTIFF

VS.                                              CIVIL ACTION NO. 3:14cv902-FKB

CAROLYN W. COLVIN, COMMISSIONER
OF SOCIAL SECURITY                                                      DEFENDANT

**OPINION AND ORDER**

I. Introduction and Procedural History

Kimaia Haywood received Supplemental Security Income (SSI) benefits as a child

based upon disability.  In 2011, after she reached the age of 18, the Social Security

Administration reviewed her case and determined that benefits should cease.[1]   She then

filed a new application, alleging disability on the basis of a learning disability.   The claim

was denied by the Social Security Administration both initially and on reconsideration,

after which Haywood requested a hearing before an administration law judge (ALJ).

Following the hearing, the ALJ issued a decision on November 25, 2013,  finding that

Haywood was not disabled.  She sought review by the Appeals Council, which declined

review.  Haywood now brings this appeal pursuant to 42 U.S.C. § 405(g).

II. Evidence

Haywood was born on December 11, 1992, and was approximately 21 years of age

at the time of the ALJ's decision.  In 2002, at the age of nine, she underwent assessment

by her school district for special education intervention and services.  On the Wechsler

---

[1]Once an individual who has received SSI benefits based upon disability as a child
reaches the age of 18, the Commissioner is required to redetermine the individual's
disability under the rules for disability used for adults.   *See* 20 C.F.R. § 416.987.

Individual Achievement Test (WIAT), she achieved standard scores of 77 in basic reading, 67 in math reasoning, 75 in reading comprehension, and 61 on numerical operations.  R. 222, [8] at 225.  On the Wechsler Intelligence Scale for Children III (WISC-III), she achieved a verbal IQ of 56, a performance IQ of 53, and a full scale score of 50, indicating that she was functioning in the deficit range of intelligence.  R. 223-227, [8] at 226-30. Based upon these scores, it was determined that she was eligible for special education services because of a specific learning disability in math computation.  Haywood continued to receive special education services throughout high school because of her learning disability.  She graduated from high school with an occupational diploma.  She has never worked.

The record contains the school district's individualized education program (IEP) assessments from 2010 and 2011, when she was in the tenth and eleventh grades, respectively.  Her IEP from April 2010 indicates that she was functioning at the 7th grade level in reading and the 6th grade level in mathematics.  R. 194, [8] at 197.  Teachers stated that she was able to follow directions, maintain orderly conduct, count basic money, round numbers to the nearest tens and hundreds, identify the parts of speech, construct formal and informal letters independently, and recognize figurative language. *Id.*  According to the evaluation, Haywood's social skills were comparable to those of her non-disabled peers.  *Id.*  The 2011 assessment indicates that Haywood was taking some special education courses and was receiving inclusion services in regular vocational, physics, history, and English classes.  R. 209, [8] at 212.  She continued to function at a 7th grade level in reading and the 6th grade in mathematics.  R. 210, [8] at 213.  Her

teachers stated that she was able to multiply four-digit numbers and fill out a check correctly.  *Id.*  The assessment indicates that she had no social, emotional, or behavioral difficulties.  *Id.*  The assessment states that she is able to devise emergency plans, apply problem-solving techniques, construct a formal and informal letter independently, and recognize figurative language.  *Id.*  It denied problems with adaptive skills or any significant cognitive disability.  R. 215, [8] at 218.

On April 11, 2011, Ms. Ryan Cherry, Haywood's special education teacher, completed a teacher questionnaire concerning Haywood's abilities and limitations.  The questionnaire addresses a set of activities in each of six domains and requires that the subject's problem with each activity be rated as none, slight, obvious, serious, or very serious.  R. 185-90, [8] at 188-93.  In the domain of acquiring and using information, Ms. Cherry indicated that Haywood had a slight problem comprehending oral instructions and an obvious problem understanding and participating in class.  R. 185, [8] at 188.  Ms. Cherry rated as serious the degree of Haywood's problem in understanding school and content vocabulary, reading and comprehending written material, comprehending and doing math problems, and recalling and applying previously learned material.  *Id.*  In the areas of expressing ideas in written form and in learning new material, Ms. Cherry rated the degree of Haywood's problem as very serious.  *Id.*

In completing the portion of the questionnaire regarding the domain of attending to and completing tasks, Ms. Cherry indicated that Haywood had a slight problem paying attention when spoken to, an obvious problem carrying out single-step instructions, a serious problem carrying out multi-step instructions, completing assignments, completing

work accurately, working without distracting others, and working at a reasonable pace. R. 186, [8] at 189.  Ms. Cherry omitted the rating of Haywood's difficulties in focusing long enough to finish tasks, but rated the frequency of her difficulty in this area as daily.  *Id.*

In the domain of interacting and relating with others, Ms. Cherry stated that Haywood had an obvious problem respecting and obeying adults in authority and a very serious problem seeking attention appropriately and expressing anger appropriately.  R. 187, [8] at 190.

In her evaluation of the domain of caring for oneself, Ms. Cherry indicated that Haywood had a serious problem being patient when necessary, using good judgment regarding personal safety, identifying and appropriately asserting emotional needs, responding appropriately to changes in her own mood, using appropriate coping skills, and knowing when to ask for help.  R. 189, [8] at 192.

Ms. Cherry indicated that Haywood had no problems in the domain of moving about and manipulating objects, and marked as not applicable the portion of the questionnaire regarding medical conditions and health and well-being.  R. 188, 190, [8] at 191, 193.

A consultative psychological examination was performed by Michael Whelan, Ph.D., on September 7, 2011.  At the time of the exam, Haywood was in the twelfth grade and had a one-year-old child.  She reported that when she was not in school she took care of her baby, providing all the necessary care including bathing, feeding, and dressing him.  R. 203, [8] at 206.  On the Wide Range Achievement Test IV (WRAT-IV), Haywood's scores indicated that her grade equivalents were 1.4 for word reading, 1.0 for sentence

comprehension, 3.3 for spelling, and 3.2 for arithmetic.  *Id.*  On the Wechsler Adult Intelligence Scale IV (WAIS-IV), she achieved a full scale IQ of 50.  R. 204, [8] at 207.  Dr. Whelan did not believe any of these scores to be valid, observing that Haywood did not put forth good effort during testing and made simple errors, such as failing to count ten apples correctly.  R. 203-4, [89] at 206-7.  He opined that her IQ scores were about 20 points lower than if she had tried to do her best and stated that he was "persuaded rather strongly that she is capable of scoring much higher."  R. 204, [8] at 207.  Dr. Whelan concluded that Haywood is probably a slow learner and that literacy skills were poorly developed.  R. 205, [8] at 208.  According to Dr. Whelan, Haywood is able to follow simple directions and solve simple problems with ease.  *Id.*

At the hearing, Haywood testified as follows.  She lives with her mother, stepfather, brother, and child.  R. 28-29, [8] at 31-32.  She never goes out and spends her day watching television.  R. 28, [8] at 31.  Her only hobby is playing Playstation.  R. 32, [8] at 35.  She can heat up simple food items in the microwave but is unable to cook on the stove or from a recipe, cannot drive, cannot count change, and cannot operate a washing machine.  R. 28-30, 33, [8] at 31-33, 36.  Haywood is able to tell time from a digital clock but not a traditional one.  R. 29, [8] at 32.  She testified that she can sweep the floor and operate a clothes dryer.  R. 28, 33, [8] at 31, 36.  When questioned as to why she cannot work, Haywood responded that she is a slow learner.  R. 33-34, [8] at 36-37.

Also testifying was Haywood's mother, Vicky Haywood.  Ms. Haywood explained that her daughter cannot cook something on the stove like a pot of greens or peas because she cannot remember all of the steps.  R. 36-37, [8] at 39-40.  She stated that

she takes her daughter shopping and tries to get her to help, but that her daughter cannot remember more than three items she has been asked to retrieve from a grocery aisle.  R. 37, [8] at 40.  She testified that her daughter can sweep the floor and fold clothes.  R. 38, [8] at 41.  When asked as to why her daughter cannot work, Ms. Haywood responded that it would take her daughter too long to learn a job.  *Id.*

William Selby, a vocational expert (VE), testified in response to two hypotheticals posed by the ALJ.  In the first, the ALJ described a person 20 years of age, with a high school education and an occupational diploma, without any past work experience, having no exertional limitations, able to remember and carry out simple instructions, and who is limited to simple, repetitive tasks.  R. 39, [8] at 42.  The VE responded that such a person could perform the jobs of bag loader, box bender, and laminating off bearer.  *Id.*  In the second hypothetical, the ALJ described an individual with the same characteristics as in the first hypothetical, except that she would miss more than four days of work a month. R. 40, [8] at 43.  The VE responded that such an individual would be unable to maintain employment.  *Id.*  Haywood's attorney posed a third hypothetical, describing a person with the same characteristics as in the first hypothetical, except that she would be unable to consistently understand, remember, and carry out even simple instructions on a sustained basis.  R. 40-41, [8] at 43-44.  In response, the VE testified that there would be no work for such a person.  R. 41, [8] at 44.

### III. Decision of the ALJ and Analysis

In his decision, the ALJ worked through the familiar sequential evaluation process

for determining disability.[2]  He found that Haywood has the severe impairment of

intellectual deficits.  R. 13, [8] at 16.  At step three, the ALJ determined that Haywood

does not have an impairment or combination of impairments that meets or medically

equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 15, [8] at 18.

He specifically considered whether Haywood meets Listing 12.05 and determined that she

meets neither the capsule definition nor the requirements of paragraphs A, B, C, or D.  R.

15-16, [8] at 18-19.  The ALJ found that Haywood has the residual functional capacity

(RFC) to perform the full range of work at all exertional levels except that she is limited to

simple repetitive tasks.  R. 16, [8] at 19.  In reaching his conclusions as to Haywood's

---

[2]In evaluating a disability claim, the ALJ is to engage in a five-step sequential
process, making the following determinations:

(1)      whether the claimant is presently engaging in substantial gainful activity (if
         so, a finding of "not disabled" is made);

(2)      whether the claimant has a severe impairment (if not, a finding of "not
         disabled" is made);

(3)      whether the impairment is listed, or equivalent to an impairment listed, in 20
         C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to
         be disabled);

(4)      whether the impairment prevents the claimant from doing past relevant work
         (if not, the claimant is found to be not disabled); and

(5)      whether the impairment prevents the claimant from performing any other
         substantial gainful activity (if so, the claimant is found to be disabled).

See 20 C.F.R. §§ 404.1520, 416.920.  The analysis ends at the point at which a finding of
disability or non-disability is required.  The burden to prove disability rests upon the
claimant throughout the first four steps; if the claimant is successful in sustaining his
burden through step four, the burden then shifts to the Commissioner at step five.  Leggett
v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

RFC, the ALJ found that Haywood had not been forthcoming or credible at the hearing regarding her limitations.  R. 17, [8] at 20.  At step four, the ALJ found, based upon the testimony of the VE, that there are jobs that Haywood is capable of performing.  R. 19, [8] at 22.  He therefore determined that she is not disabled.  R. 19-20, [8] at 22-23.

In reviewing the Commissioner's decision, this Court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance."  *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)).  If the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed,  *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)), even if the court finds that the preponderance of the evidence is *against* the Commissioner's decision, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

Plaintiff argues that the ALJ erred in failing to find that Haywood meets Listing 12.05(B).  Listing 12.05 consists of an introductory paragraph, or "capsule definition," setting forth the diagnostic criteria for intellectual disability and four "severity prongs" (paragraphs A through D).[3]  In order to satisfy the listing, a social security claimant must

_____

[3]The listing reads as follows:

12.05.  *Intellectual disability*: Intellectual disability refers to significantly subaverage

meet both the capsule definition and one of the four severity prongs.  *Randall v. Astrue*,

570 F.3d 651 (5th Cir. 2009).  The ALJ found that Haywood meets neither the

requirements of the capsule definition nor the requirements of any of the severity prongs.

R. 15-16, [8] at 18-19.  The ALJ's conclusion that she does not meet the capsule definition

---

general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

A.  Mental incapacity evidenced by dependence upon others for personal needs (e.g. toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual function is precluded;

OR

B.  A valid verbal, performance, or full scale IQ of 59 or less;

OR

C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitations of function;

OR

D.  A valid verbal, performance, or full scale IQ of 60 through 70, resulting in a least two of the following:

1.  Marked restriction of activities of daily living; or

2.  Marked difficulties in maintaining social functioning; or

3.  Marked difficulties in maintaining concentration, persistence, or pace; or

4.  Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.

is supported by substantial evidence, specifically, her school records, which show that her social skills are comparable with those of her peers, that she has functional academic skills, and that she can perform such tasks as counting money, filling out a check, and writing a letter; indeed, the only evidence in the record indicating deficits in adaptive functioning is Haywood's own testimony, which the ALJ found to be not credible. Furthermore, the ALJ found that Haywood does not meet the B criteria, in that she does not have a "valid verbal, performance, or full scale IQ of 59 or less." R. 15, [8] at 18. While he acknowledged her scores as reported by Dr. Whelan, he accepted Dr. Whelan's opinion that the scores were not valid because she had failed to cooperate fully with the examination. *Id.*, [8] at 21. Haywood argues that this was error on the ALJ's part, characterizing Dr. Whelan's opinion as unsupported. To the contrary, Dr. Whelan's opinion was based upon his examination of Haywood and her behavior during testing, as well as other documentary evidence of record. The ALJ was justified in giving great weight to Dr. Whelan's professional opinion that Haywood's test scores were not valid.[4]

Haywood's final argument is that the ALJ erred in failing to explain his credibility findings in accordance with SSR 96-7p, 1996 WL 374186, which requires the ALJ to articulate specific reasons for rejecting portions of a claimant's testimony. This argument is without merit. The ALJ gave detailed reasons for concluding that Haywood's limitations were not as severe as she claimed. He found that she was not forthcoming in her testimony, in that some of her initial answers to questions were incomplete and

---

[4]In her brief, Haywood also references her 2002 WISC-III scores. These scores would no longer be considered valid. *See* 20 C.F.R. Pt. 404, Supt. P. App. 1 § 112.00(D)(10) (indicating that an IQ score of 40 or above obtained between the ages of 7 and 16 is valid for only two years.)

misleading.   For example, when asked whether she was in regular classes or special

education classes in school, Haywood responded that she took special education classes,

whereas the records show that she was also in regular and occupational classes.  Also,

when asked with whom she lived, Haywood's initial response did not include her child until

prompted by the ALJ.  She never mentioned care of the child in her daily activities,

instead testifying that she merely sat and watched television all day, whereas she had

reported to Dr. Whelan that she feeds, bathes, dresses, and otherwise cares for her child.

The ALJ pointed out that her testimony that she could not count change was inconsistent

with the 2010-2011 IEPs, which showed that she could count basic money.   The ALJ also

found that Haywood's failure to cooperate in testing by Dr. Whelan and the discrepancies

between those test scores and her school records weighed against her credibility, as did

the fact that she has never made any attempt to find a job.  In short, the ALJ gave several

detailed and logical reasons for finding that Haywood's testimony was not entirely

credible.   The ALJ satisfied his duty to carefully determine Haywood's credibility and to

explain his reasoning.

## IV.  Conclusion

The ALJ committed no reversible errors of law, and his decision is supported by

substantial evidence.  The Commissioner's motion is granted, and the decision of the

Commissioner is hereby affirmed.  A separate judgment will be entered.

So ordered and adjudged, this the 23rd day of March, 2016.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE